IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ERENDIDA FRANCO-HERNANDEZ, YADIRA GARCIA-MARTINEZ, ESMERALDA PONCE-RUBIO, ANTONIA REYES-VELEZ and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | |
| | : | CIVIL ACTION NO. 7:14-cv-62(HL) |
| v. | : : | |
| SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON FARMS MEX, L.P.; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; WK MEX PROPERTIES, L.P.; and WKW, LLC, | : : : : : : : : | |
| Defendants. | : : : : | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.      Plaintiffs are agricultural workers recruited by Defendants in 2011, 2012, and 2013 to work at Defendants operations in and around Colquitt and Cook Counties, Georgia. Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2.      Defendants violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff and other similarly-situated workers at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse

their pre-employment expenses as required by law.    Plaintiffs allege that Defendants failure to reimburse expenses and underpayment of workers was done knowingly and willfully.

3.      Defendants breached Plaintiffs' and Opt-In Plaintiffs' employment contracts by failing to pay the contractual minimum wage for all hours worked and by failing to pay or provide return transportation back to the place from which Plaintiffs had come to work for Defendants.

4.      Plaintiffs and Opt-In Plaintiffs seek to their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to:

  a.  28 U.S.C. ' 1331 (Federal Question);

  b.  29 U.S.C. ' 1337 (Interstate Commerce);

  c.  29 U.S.C. ' 216(b) (FLSA); and

  d.  28 U.S.C. ' 1367 (Supplemental).

6.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs= federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.      Venue is proper in this district pursuant to 28 U.S.C. ' 1391(b) and M.D. Ga. Local Rule 3.4 because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

### III. PARTIES

8.      Plaintiffs Erendida Franco-Hernandez worked for Defendants in the 2012 and 2013 seasons.

9.      Plaintiff Esmeralda Ponce-Rubio worked for Defendants in the 2011 and 2012 seasons.

10.      Plaintiff Antonia Reyes-Velez worked for Defendants in the 2011 and 2013 seasons.

11.      Plaintiff Yadira Garcia-Martinez worked for Defendants in the 2012 season.

12.      At all times relevant to this complaint, Plaintiffs and others similarly situated were H-2A agricultural guestworkers admitted into the United States to work under the auspices of the H-2A program, 8 U.S.C. ' 1188 and 20 C.F.R. ' ' 655.0 B 655.185 or were employed alongside H-2A workers under the terms of an H-2A job order, pursuant to 20 C.F.R. § 655.122(a).

13.       Plaintiffs' FLSA consent forms are attached as Exhibit A.

14.      At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Farms Mex, L.P. ("Hamilton Farms Mex"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), WK Mex Properties, L.P. ("WK Mex"), and WKW, LLC ("WKW"), collectively the "Corporate Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

15.      Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton

Growers and Southern Valley and is a member-manager of the remaining Defendants and may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

16.    Defendant Kent Hamilton is the day-to-day manager of all the Corporate Defendants.

17.    Defendant Kent Hamilton exercises management, ownership, and financial control over all of the Corporate Defendants.

18.    Defendant Kent Hamilton directs labor relations at the Corporate Defendants and has the power to hire, fire, and alter the terms and conditions of employment at all of the entities.

19.    Plaintiffs and Opt-in Plaintiffs were dependent for their wages as a matter of economic reality on Defendant Kent Hamilton and the Corporate Defendants.

20.    Defendant Hamilton Growers may be served with process through its registered agent, Wanda Hamilton-Tyler, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

21.    Defendant Southern Valley may be served with process through its registered agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

22.    Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, WK Holdings, WK Mex, and WKW, LLC may be served with process through their registered agent, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

23.    The four Limited Partnership Defendants, Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex ("Limited Partnership Defendants"), are comprised of General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and Defendant Kent Hamilton through their respective trusts.

4

24.    The two Limited Liability Corporation Defendants, WK Holdings and WKW, ("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant Kent Hamilton Trust.

25.    Defendant Hamilton Growers, the Limited Partnership Defendants, and Defendant WKW solely provide services for Defendant Southern Valley.

26.    Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

27.    In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex Properties and is responsible for management, employee relations, and bookkeeping.

28.    Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

29.    The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

30.    Defendant Hamilton Farms Mex leases farming equipment to Defendant Southern Valley for the cultivation of produce.

31.    Defendant Hamilton Produce leases farm equipment and refrigerated containers to Defendants Hamilton Growers and Southern Valley for the cultivation and storage of produce.

32.    Defendant Hamilton Produce does not invoice Defendants Hamilton Growers or

Southern Valley for the leased equipment and containers and is merely paid as obligations arrive or come due. Defendant Hamilton Produce solely provides equipment and containers to Defendants Hamilton Growers and Southern Valley.

33.     Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

34.     The majority of Defendant Kenda Properties' income is from land rent.

35.     Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

36.     Defendant WK Mex sells future produce paid for in advance exclusively to Defendant Southern Valley.

37.     The management of Southern Valley directs WK Mex to operate in synch and seamlessly with Southern Valley.

38.     Defendant WKW provides transportation services to Defendant Southern Valley.

39.     Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

40.     The transportation services provided by WKW form an integral part of the business of Defendant Southern Valley.

41.     The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

6

42.     Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

43.     Defendant WK Holdings controls the property of the Limited Partnership Defendants and Defendant WKW and is authorized to sign loans on their behalf.

44.     Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

45.     The Corporate Defendants form part of the same enterprise and are economically dependent on one another for their ongoing business as Defendants Hamilton Growers and WK Mex supply the crops that Defendant Southern Valley markets and ships, Defendants Kenda Properties, Hamilton Farms Mex, and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley, WKW provides transportation services to Defendant Southern Valley, and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

46.     Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are also based.

47.     Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

48.     Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, WK Holdings, Hamilton Farms Mex, and WK Mex.

49.     The Corporate Defendants act together to obtain financing and transact business.

50.     The Corporate Defendants report their business results on consolidated financial statements, reporting the business results all together and do not prepare individual financial statements for reporting outside the companies.

51.     Defendants Hamilton Growers and WK Holdings effectively have no assets and Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are dependent for their continued existence on Defendants Kent Hamilton and Southern Valley.

52.     Defendants Hamilton Growers and WK Mex coordinate all of their activities with Defendant Southern Valley, and Defendant Southern Valley directs when they are to harvest crops, which fields are to be harvested, and how much is to be harvested.

53.     The Corporate Defendants rely on each other to grow, pack and sell fruit and vegetable commodities.

54.     The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities.

55.     Defendants are employers of Plaintiffs and other similarly situated workers employed under the terms of the 2011-2012 job orders attached as Exs. B-E as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), because they had a place of business in the U.S. and a means by which they could be contacted for employment, had the ability to supervise and control

8

the work of Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

56.     Defendant Hamilton and the Corporate Defendants were employers under the Fair Labor Standards Act because Plaintiffs and other similarly situated were dependent on Defendants as a matter of economic reality.

57.     At all times relevant to this action, Defendants Kent Hamilton and the Corporate Defendants were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## IV. THE H-2A PROGRAM

58.     The H-2A program was created by 8 U.S.C. §1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

59.     Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

60.     The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted Plaintiffs' employment contracts. 20 C.F.R. § 655.103(b) (definition

of "work contract").

61.     The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and the contracts contained a promise to "comply with applicable Federal, State and local law and regulations" including the Fair Labor Standards Act. *See* 20 C.F.R. ' 655.135(e).

62.     Each year, Defendant Hamilton Growers submitted job orders to the U.S. DOL.

63.     The 2011 and 2012 job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton. Exs. B-E.

64.     Plaintiffs' and Opt-In Plaintiffs' employment contracts promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR [Adverse Effect Wage Rate], or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. Ex. B at 5 ("More Details About the Pay"); Ex. C and E at 11 and Ex. D at 10 (Attachment 1 to ETA 790, Item 16, "More Details About the Pay").

65.     Plaintiffs' and Opt-In Plaintiffs' employment contracts promised to pay the applicable AEWR, which was $9.12 in 2011 and $9.39 in 2012. 76 Fed. Reg. 11286-87 (Mar. 1, 2011); 76 Fed. Reg. 79711-12 (Dec. 22, 2011).

66.     Plaintiffs' employment contracts also promised that workers would be paid their subsistence expense for travel from the place where the worker came and return travel back to that place each year as required by 20 C.F.R. § 655.122(h).

67.     The minimum daily subsistence amount as published in the Federal Register and as incorporated into Plaintiffs' contracts was $10.73 in 2011, $11.13 in 2012, and $11.42 in 2013. 76 Fed. Reg. 11,286 (March 1, 2011), 77 Fed. Reg. 12,882 (March 12, 2012), 78 Fed. Reg. 15,741 (March 12, 2013).

## V.   STATEMENT OF FACTS

68.    In each year relevant to this Complaint, Defendants imported H-2A workers under job order contracts to plant, harvest, and pack produce.

69.    Defendant Hamilton Growers filed job order number GA 7913958, proposing to employ 494 agricultural workers from March 8, 2011 through December 31, 2011. A copy of this job order is attached as Exhibit B.

70.    Plaintiffs Esmeralda Ponce-Rubio and Antonia Reyes-Velez were employed under the terms of the job order attached as Exhibit B.

71.    Defendant Hamilton Growers filed job order assigned ETA Case No. C-12017-31794 proposing to employ 75 agricultural workers from March 1, 2012, through December 31, 2012. A copy of this job order is attached as Exhibit C.

72.    Defendant Hamilton Growers filed a second job order in 2012, GA 8002294, proposing to employ 160 agricultural workers from April 8, 2012, through December 31, 2012. A copy of this job order is attached as Exhibit D.

73.    Plaintiff Esmeralda Ponce-Rubio was employed under the terms of the job order attached as Exhibit D.

74.    Defendant Hamilton Growers filed a third job order in 2012, GA 8010634, proposing to employ 369 agricultural workers from May 3, 2012, through December 31, 2012. A copy of this job order is attached as Exhibit E.

75.    Plaintiffs Erendida Franco-Hernandez and Yadira Garcia-Martinez were employed under the terms of the job order attached as Exhibit E.

<u>Recruitment, Hiring, and Expenses of Plaintiff Workers</u>

76.     Defendants recruited the Plaintiffs and other similarly-situated workers in Mexico through a network of local recruiters.

77.     Defendants through these recruiters made employment offers to plant, harvest, and pack produce in Georgia.

78.     Among the network of recruiters was Felix Ponce-Rubio, Defendants' agent and employee, who was directed to recruit and hire potential H-2A workers by Defendants.

79.     Felix Ponce-Rubio and the other recruiters were directed by Defendants' U.S. based supervisor, Fermin Palomares, and his family members.

80.     Upon information and belief, Defendants did not compensate Mr. Ponce or the other recruiters for their recruiting services.

81.     Workers were required to pay recruitment fees to Mr. Ponce to be included on the list of workers and secure an offer of employment.

82.     Upon information and belief, similarly-situated workers in other communities were required to pay recruitment fees to Defendants' other recruiters to secure an offer of employment with Defendants.

83.     Plaintiffs Yadira Garcia-Martinez and Antonia Reyes-Velez, and other similarly situated workers paid, at their own expense, recruitment fees to Mr. Ponce of 1,000 Mexican pesos, approximately $77.

84.     The Plaintiffs and other similarly-situated workers accepted the employment offer by signing up with agents of the Defendants in Mexico.

85.     Plaintiffs and other similarly-situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants= operations in Georgia.

86.     Plaintiffs and other similarly-situated workers paid, at their own expense, visa and processing fees in excess of $150 per season in order to obtain an H-2A visa for work in Defendants' operations.

87.     In order to comply with the Defendants= hiring processes, the Plaintiffs and other similarly-situated workers traveled, at their own expense, from their homes to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interview necessary to obtain an H-2A visa.

88.     Plaintiffs= and other similarly-situated workers' travel expenses from their place of recruitment to Monterrey, Mexico exceeded $40 per season.

89.     Plaintiffs and other similarly-situated workers incurred expenses for lodging in Monterrey while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

90.     Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers boarded a bus and paid their own travel expenses from Monterrey, Mexico, or Nuevo Laredo, Mexico, to Defendants' operations in Georgia, which exceeded $150.

91.     For each year they participated in a contract, Plaintiffs each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

92.     Plaintiffs were required to pay their own subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

93.     The expenditures set out in paragraphs 81 through 92 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. ' '  531.32(c) and 778.217.

94.     The expenditures set out in paragraphs 81 through 92 were made before receipt of Plaintiffs' first paychecks in each contract period in which they worked.

95.     Defendants failed to reimburse Plaintiffs and similarly-situated workers during the first workweek for the costs described in paragraphs 81 through 92, resulting in these workers' first week wages falling well below the minimum wage.

96.     Defendants did not reimburse Plaintiffs and similarly-situated workers at the 50 percent point of these workers= work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed as required by their employment contracts.

97.     Plaintiffs and other similarly-situated workers did not receive payment for all compensable hours worked as required by the FLSA and their H-2A employment contract.

98.     Plaintiffs and other similarly-situated workers were paid for many work activities on a piece-rate basis, such that they were paid according to the amount of crops they harvested or packed without regard to the number of hours they worked.

99.     Defendants were on notice of their FLSA obligations due in part to prior litigation and due to notices and correspondence they had received.

100.    Defendant Hamilton Growers was previously sued for similar violations in 1998 and 2003 and had agreed to make payments to reimburse travel and immigration costs of workers.

101.    Defendants knew of or showed reckless disregard for their FLSA obligations by failing to fully reimburse Plaintiffs and other similarly situated workers for expenses incurred for Defendants' benefit.

<u>COUNT I</u>

**FAIR LABOR STANDARDS ACT**

102.    Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 101 above by reference.

14

103.    This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants= violations of the FLSA pursuant to 29 U.S.C. ' 216 (b).

104.    Plaintiffs Franco-Hernandez, Garcia-Martinez, and Ponce-Rubio assert this claim for the 2012 season.

105.    Plaintiffs Ponce-Rubio and Reyes-Velez assert this claims for the 2011 seasons.

106.    As detailed above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. ' 206(a).

107.    The violations of the FLSA resulted, in part, from Defendants= failure to reimburse expenses as detailed in paragraphs 81 through 92 above, which Plaintiffs incurred primarily for the benefit or convenience of Defendants prior to Plaintiffs' first week of work. When these expenses were subtracted from the Plaintiffs= first week=s pay, as required by law, Plaintiffs= earnings were near or below zero, and fell well below the required average minimum hourly wage for that pay period.

108.    The violations set forth in this Count resulted, in part, from Defendants= practice of paying Plaintiffs based on the quantity of the produce harvested or packed without regard to the number of hours Plaintiffs worked.

109.    Pursuant to 29 U.S.C. ' 216(b), as a result of Defendants= violations of the FLSA set forth in this Count, Plaintiffs and Opt-In Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants= operations and during which they earned less than the applicable minimum wage.

110.    Defendants= violations set out in this Count were willful within the meaning of FLSA.

## COUNT II

## BREACH OF CONTRACT

111.    Plaintiffs and Opt-In Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 101 above by reference.

112.    This Count sets forth Plaintiffs= and Opt-In Plaintiffs= claims for declaratory relief and damages for Defendants= breach of the rate of pay provisions, transportation provisions, and AAssurances@ provision contained in Plaintiffs= and Opt-In Plaintiffs= employment contracts, including the terms set forth in paragraphs 61-67 above, which created a contractual promise to pay Plaintiffs and Opt-In Plaintiffs at least the applicable federal minimum wage for each compensable hour of work in a workweek and which promised transportation and subsistence from and to the place from which the worker came.

113.    Plaintiffs Franco-Hernandez, Garcia-Martinez, and Ponce-Rubio assert this claim for the 2012 season.

114.    Plaintiffs Ponce-Rubio and Reyes-Velez assert this claim for the 2011 seasons.

115.    Defendants, through their agents, offered employment on the terms and conditions set out in the 2011 and 2012 job orders as described in paragraphs 59-67 above.

116.    Plaintiffs and Opt-In Plaintiffs accepted Defendants= offer.

117.    Defendants breached the Plaintiffs= and Opt-In Plaintiffs= H-2A employment contracts by failing to pay the Plaintiffs and Opt-In Plaintiffs the applicable AEWR, as described in paragraphs 97-98, above.

118.    Defendants also breached the Plaintiffs= and Opt-In Plaintiffs= H-2A employment contracts by failing to pay Plaintiffs and Opt-In Plaintiffs at least the applicable federal minimum wage for each compensable hour of work in a workweek, as set forth in paragraphs 85-98 above.

119.    Defendants also breached the Plaintiffs= and Opt-In Plaintiffs= H-2A employment contracts by failing to pay Plaintiffs and Opt-In Plaintiffs at the 50 percent point of Plaintiffs= and Opt-In Plaintiffs= employment contracts for all inbound transportation and subsistence expenses not previously reimbursed as required by their employment contracts.

120.    Defendants also breached the Plaintiffs= and Opt-In Plaintiffs= H-2A employment contracts by failing to pay or provide Plaintiffs and Opt-In Plaintiffs transportation and subsistence expenses to the place from which they had come at the completion of work under their employment contracts.

121.    As a direct consequence of Defendants= breach of the Plaintiffs' and Opt-In Plaintiffs= H 2A employment contract, Plaintiffs and Opt-In Plaintiffs suffered economic injury.

122.    Defendants are liable to Plaintiffs and Opt-In Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants= breach, as provided by federal common law and/or O.C.G.A. ' 13-6-2, including unpaid wages and reimbursement amounts, damages arising from the delay, and prejudgment interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)    Under Count I:

1.    Declare that Defendants have willfully violated the FLSA as specified above in paragraphs 99-101 above;

2.      Grant judgment against Defendants and in favor of each Plaintiff and Opt-In Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. ' 216(b); and

3.      Award Plaintiffs and Opt-In Plaintiffs their attorneys' fees pursuant to 29 U.S.C. ' 216(b).

(b)     Under Count II:

1.      Declare that Defendants have breached their employment contracts with Plaintiffs and Opt-In Plaintiffs as specified in paragraphs 113-122, above;

2.      Grant judgment against Defendants and in favor of each Plaintiff and Opt-In Plaintiff, in the amount of each Plaintiffs= and Opt-In Plaintiffs= damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(d)     Award Plaintiffs and Opt-In Plaintiffs pre- and post-judgment interest as allowed by law;

(e)     Cast all costs upon Defendants; and

(f)     Award Plaintiffs and Opt-In Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this _25_ day of April, 2014,

___s/ Dawson Morton_____
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA    30303
Phone:   (404) 463-1633
*Attorneys for Plaintiffs*