IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ERENDIDA FRANCO-HERNANDEZ, YADIRA GARCIA-MARTINEZ, ESMERALDA PONCE-RUBIO, ANTONIA REYES-VELEZ, IDALIA RODRIGUEZ-CONTRERAS and all others similarly situated, | : : : : : : : | |
|    Plaintiffs, | : : | CIVIL ACT. NO. 7:14-cv-62(HL) |
| ELOY ACOSTA-HERNANDEZ, FIDEL AVILA-PEREZ, JULIAN BADILLO-MORALES, ERNESTINO MARTINEZ-HERNANDEZ, ARACELY MARTINEZ-MARTINEZ, ZENOBIO MATA-CHAVEZ, ANA LETICIA PONCE-RUBIO, GENARO PORFIRIO-MARTINEZ, REYNA PORFIRIO-SANTIAGO, ISAAC MENDOZA-MARTINEZ, CIRIACO MORALES-ESPINOZA, | : : : : : : : : : : : | |
|    Opt-In Plaintiffs, | : : | |
| v. | : : | |
| SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON FARMS MEX, L.P.; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; WK MEX PROPERTIES, L.P.; and WKW, LLC, | : : : : : : : : : | |
|    Defendants. | : : : : | |

## SECOND AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

1.     Plaintiffs are agricultural workers recruited by Defendants in 2011, 2012, and

2013 to work at Defendants' operations in and around Colquitt and Cook Counties, Georgia.

Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2.      Defendants violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff and other similarly-situated worker at least the required hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law.  Defendants further violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff, and other similarly situated worker employed in Defendants' packing shed operations overtime wages for hours worked in excess of forty hours per workweek. Plaintiffs allege that Defendants' failure to reimburse expenses and underpayment of workers was done knowingly and willfully.

3.      Defendants breached Plaintiffs' and Opt-In Plaintiffs' employment contracts by failing to pay the contractually promised wages, including those required by the Fair Labor Standards Act, for all hours worked and by failing to pay or provide return transportation back to the place from which Plaintiffs and Opt-In Plaintiffs had come to work for Defendants. Defendants further breached certain Opt-In Plaintiffs' employment contracts by terminating them based on hourly production requirements which were not terms of their contracts.

4.      Plaintiffs and Opt-In Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to:

      a.       28 U.S.C. § 1331 (Federal Question);

b.      29 U.S.C. § 1337 (Interstate Commerce);

c.      29 U.S.C. § 216(b) (FLSA); and

d.      28 U.S.C. § 1367 (Supplemental).

6.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4 because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

### III. PARTIES

8.      Plaintiffs Erendida Franco-Hernandez and Idalia Rodriguez-Contreras worked for Defendants in the 2012 and 2013 seasons.

9.      Plaintiff Esmeralda Ponce-Rubio worked for Defendants in the 2011 and 2012 seasons.

10.     Plaintiff Antonia Reyes-Velez worked for Defendants in the 2011 and 2013 seasons.

11.     Plaintiff Yadira Garcia-Martinez worked for Defendants in the 2012 season.

12.     Opt-In Plaintiffs Fidel Avila-Perez, Julian Badillo-Morales, Aracely Martinez-Martinez, Zenobio Mata-Chavez, Ana Leticia Ponce-Rubio and Genaro Porfirio-Martinez worked for Defendants in the 2012 season.

13.     Opt-In Plaintiffs Eloy Acosta-Hernandez, Ernestino Martinez-Hernandez, Reyna Porfirio-Santiago, Isaac Mendoza-Martinez and Ciriaco Morales-Espinoza worked for Defendants in the 2013 season.

14.     At all times relevant to this complaint, Plaintiffs and others similarly situated were H-2A agricultural guest workers admitted into the United States to work under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0-655.185 or were employed alongside H-2A workers under the terms of an H-2A job order, pursuant to 20 C.F.R. § 655.122(a).

15.      Plaintiffs' FLSA consent forms were attached as Exhibit A to the original Complaint in this action and those of Opt-in Plaintiffs have been filed separately as part of subsequent document entries.

16.     At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Farms Mex, L.P. ("Hamilton Farms Mex"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), WK Mex Properties, L.P. ("WK Mex"), and WKW, LLC ("WKW"), collectively the "Corporate Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

17.     Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley and is a member-manager of the remaining Defendants and may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

18.     Defendant Kent Hamilton is the day-to-day manager of all the Corporate Defendants.

19.     Defendant Kent Hamilton exercises management, ownership, and financial control over all of the Corporate Defendants.

20.     Defendant Kent Hamilton directs labor relations at the Corporate Defendants and has the power to hire, fire, and alter the terms and conditions of employment for all employees of all of the entities.

21.     Plaintiffs and Opt-in Plaintiffs were dependent for their wages as a matter of economic reality on Defendant Kent Hamilton and the Corporate Defendants.

22.     Defendant Hamilton Growers may be served with process through its chief executive officer, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

23.     Defendant Southern Valley may be served with process through its registered agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

24.     Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, WK Holdings, WK Mex, and WKW, LLC may be served with process through their registered agent, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

25.     The four Limited Partnership Defendants, Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex ("Limited Partnership Defendants"), are comprised of General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and Defendant Kent Hamilton through their respective trusts.

26.     The two Limited Liability Corporation Defendants, WK Holdings and WKW, ("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant Kent Hamilton Trust.

27.     Defendant Hamilton Growers, the Limited Partnership Defendants, and Defendant WKW solely provide services for Defendant Southern Valley.

5

28.     Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

29.     In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex Properties and is responsible for management, employee relations, and bookkeeping.

30.     Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

31.     The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

32.     Defendant Hamilton Farms Mex leases farming equipment to Defendant Southern Valley for the cultivation of produce.

33.     Defendant Hamilton Produce leases farm equipment and refrigerated containers to Defendants Hamilton Growers and Southern Valley for the cultivation and storage of produce.

34.     Defendant Hamilton Produce does not invoice Defendants Hamilton Growers or Southern Valley for the leased equipment and containers and is merely paid as obligations arise or come due. Defendant Hamilton Produce solely provides equipment and containers to Defendants Hamilton Growers and Southern Valley.

35.     Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were

6

executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

36.     The majority of Defendant Kenda Properties' income is from land rent.

37.     Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

38.     Defendant WK Mex sells future produce paid for in advance exclusively to Defendant Southern Valley.

39.     The management of Southern Valley directs WK Mex to operate in synch and seamlessly with Southern Valley.

40.     Defendant WKW provides transportation services to Defendant Southern Valley.

41.     Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

42.     The transportation services provided by WKW form an integral part of the business of Defendant Southern Valley.

43.     The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

44.     Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

45.     Defendant WK Holdings controls the property of the Limited Partnership Defendants and Defendant WKW and is authorized to sign loans on their behalf.

7

46.     Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

47.     The Corporate Defendants form part of the same enterprise and are economically dependent on one another for their ongoing business as Defendants Hamilton Growers and WK Mex supply the crops that Defendant Southern Valley markets and ships, Defendants Kenda Properties, Hamilton Farms Mex, and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley, WKW provides transportation services to Defendant Southern Valley, and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

48.     Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are also based.

49.     Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

50.     Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, WK Holdings, Hamilton Farms Mex, and WK Mex.

51.     The Corporate Defendants act together to obtain financing and transact business.

52.     In all years relevant to this action, the Corporate Defendants collectively had

8

annual gross sales in excess of five hundred thousand dollars ($500,000).

53.     At least three of the Corporate Defendants, Hamilton Growers, WKW, and Southern Valley have jointly insured themselves against employment practices in a policy that extends to those other companies considered subsidiaries or joint ventures.

54.     The Corporate Defendants report their business results on consolidated financial statements, reporting the business results all together and do not prepare individual financial statements for reporting outside the companies.

55.     Defendants Hamilton Growers and WK Holdings effectively have no assets and Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are dependent for their continued existence on Defendants Kent Hamilton and Southern Valley.

56.     Defendants Hamilton Growers and WK Mex coordinate all of their activities with Defendant Southern Valley, and Defendant Southern Valley directs when they are to harvest crops, which fields are to be harvested, and how much is to be harvested.

57.     The Corporate Defendants rely on each other to grow, pack and sell fruit and vegetable commodities.

58.     The Corporate Defendants process all shipments of produce to any one of the entities using the same "Receiving Record" form.

59.     The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities, and constitute one economic enterprise.

60.     Defendants are employers of Plaintiffs, Opt-In Plaintiffs and other similarly situated workers employed under the terms of the 2011, 2012, and 2013 job orders attached as Exs. B-E to the original Complaint or Exs. F-H filed as exhibits to the Amended Complaint as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), because they had a place of business in the U.S. and a means by which they could be contacted for employment, had an employer relationship with the Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

61.     Kent Hamilton, as a principal and agent for all of the Corporate Defendants, signed the job orders on his own behalf and on behalf of the Corporate Defendants.

62.     Defendant Hamilton and the Corporate Defendants were employers under the Fair Labor Standards Act because Plaintiffs and other similarly situated were dependent on Defendants as a matter of economic reality as detailed in the preceding paragraphs.

63.     At all times relevant to this action, Defendants Kent Hamilton and the Corporate Defendants were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## IV. THE H-2A PROGRAM

64.     The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

65.     Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

66.     The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for Plaintiffs and others similarly situated. 20 C.F.R. § 655.103(b) (definition of "work contract").

67.     The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and the contracts contained a promise to "comply with applicable Federal, State and local law and regulations" including the Fair Labor Standards Act. *See* 20 C.F.R. § 655.135(e).

68.     In each year relevant to this action, Defendant Hamilton Growers submitted job orders to the U.S. DOL.

69.     The 2011, 2012, and 2013 job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton. Exs. B-H.

70.     In the employment contracts, Defendants promised that each worker would earn at least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. Ex. B at 5 ("More Details About the Pay"); Ex. C and E at 11 and Ex. D at 10 (Attachment 1 to ETA 790, Item 16, "More Details About the Pay"); Ex. F at 15, Ex. G at 14, Ex. H at 14 (Attachment 1 to ETA 790, Item 16, "More Details About the Pay").

71.     Plaintiffs' and Opt-In Plaintiffs' employment contracts promised to pay the

applicable AEWR, which was $9.12 in 2011, $9.39 in 2012, and $9.78 in 2013. 76 Fed. Reg. 11286-87 (Mar. 1, 2011); 76 Fed. Reg. 79711-12 (Dec. 22, 2011); 78 Fed. Reg. 1259 (Jan. 8, 2013).

72.     In promising to pay the federally mandated AEWR, Defendants also promised to pay that wage free and clear without deduction of items for the employer's benefit or without reducing an employee's wages by shifting costs to their employees.

73.     In the employment contracts Defendants also promised that workers would be paid their subsistence expense for travel from the place where the worker came and return travel back to that place each year as required by 20 C.F.R. § 655.122(h).

74.     The minimum daily subsistence amount as published in the Federal Register and as incorporated into Plaintiffs', Opt-In Plaintiffs', and other similarly situated workers' contracts was $10.73 in 2011, $11.13 in 2012, and $11.42 in 2013. 76 Fed. Reg. 11,286 (March 1, 2011), 77 Fed. Reg. 12,882 (March 12, 2012), 78 Fed. Reg. 15,741 (March 12, 2013).

75.     The 2012 job orders did not contain an hourly production requirement, only the vague aspirational statement that "workers are to keep up with fellow workers; and not detrimentally affect other workers [sic] productivity." Ex. C at 9 (March 2012); Ex. D at 8 (April 2012); Ex. E at 9 (May 2012).

## V.  STATEMENT OF FACTS

76.     In each year relevant to this Complaint, Defendants imported H-2A workers under job order contracts to plant, harvest, and pack produce.

77.     Defendant Hamilton Growers filed job order number GA 7913958, proposing to employ 494 agricultural workers from March 8, 2011 through December 31, 2011. A copy of this job order was attached as Exhibit B to the original Complaint in this action.

78.     Plaintiffs E. Ponce-Rubio and Reyes-Velez were employed under the terms of the job order attached as Exhibit B.

79.     Defendant Hamilton Growers filed job order assigned ETA Case No. C-12017-31794 proposing to employ 75 agricultural workers from March 1, 2012, through December 31, 2012. A copy of this job order was attached as Exhibit C to the original Complaint in this action.

80.     Defendant Hamilton Growers filed a second job order in 2012, GA 8002294, proposing to employ 160 agricultural workers from April 8, 2012, through December 31, 2012. A copy of this job order was attached as Exhibit D to the original Complaint in this action.

81.     Plaintiff E. Ponce-Rubio was employed under the terms of the job order attached as Exhibit D.

82.     Defendant Hamilton Growers filed a third job order in 2012, GA 8010634, proposing to employ 369 agricultural workers from May 3, 2012, through December 31, 2012. A copy of this job order was attached as Exhibit E to the original Complaint in this action.

83.     Plaintiffs E. Franco-Hernandez, Garcia-Martinez and Rodriguez-Contreras, and Opt-In Plaintiffs Avila-Perez, Mata-Chavez, Badillo-Morales and Porfirio-Martinez, were employed under the terms of the job order attached as Exhibit E.

84.     Defendant Hamilton Growers filed a job order in 2013, GA 8074274, proposing to employ 76 agricultural workers from March 16, 2013, through December 31, 2013. A copy of this job order is attached as Exhibit F to the Amended Complaint.

85.     Defendant Hamilton Growers filed a second job order in 2013, GA 8076591, proposing to employ 200 agricultural workers from April 1, 2013, through December 31, 2013. A copy of this job order is attached as Exhibit G to the Amended Complaint.

86.     Defendant Hamilton Growers filed a third job order in 2013, GA 8082253, proposing to employ 329 agricultural workers from May 1, 2013, through December 31, 2013. A copy of this job order is attached as Exhibit H to the Amended Complaint.

87.     Upon information and belief, Plaintiffs Franco-Hernandez and Rodriguez-Contreras, and Opt-In Plaintiffs Acosta-Hernandez, Martinez-Hernandez, Morales-Espinoza and Mendoza-Martinez were employed under the terms of the job order attached as Exhibit H.

<u>Recruitment, Hiring, and Expenses of Plaintiff Workers</u>

88.     Defendants recruited the Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers in Mexico through a network of local recruiters.

89.     Defendants through these recruiters made employment offers to plant, harvest, and pack produce in Georgia.

90.     Among the network of recruiters was Felix Ponce-Rubio, Defendants' agent and employee, who was directed to recruit and hire potential H-2A workers by Defendants in the Chapuluacan, Hidalgo area of Mexico.

91.     Felix Ponce-Rubio and the other recruiters were directed by Defendants' U.S. based supervisor, Fermin Palomares, and his family members.

92.     Upon information and belief, Defendants did not compensate Mr. Ponce or the other recruiters for their recruiting services.

93.     Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers accepted the employment offer by signing up with agents of the Defendants in Mexico.

94.     Plaintiffs and other similarly-situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants' operations in Georgia.

95.     Plaintiffs and other similarly-situated workers paid visa and processing fees in excess of $150 per season in order to obtain an H-2A visa for work in Defendants' operations.

96.     In order to comply with the Defendants' hiring processes, Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers traveled, at their own expense, from their homes to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interview necessary to obtain an H-2A visa.

97.     Plaintiffs and other similarly-situated workers incurred expenses for lodging in Monterrey while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

98.     Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers boarded a bus and paid their own travel expenses from Monterrey, Mexico, or Nuevo Laredo, Mexico, to Defendants' operations in Georgia, which exceeded $150.

99.     For each year they participated in a contract, Plaintiffs and others similarly situated each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

100.    Plaintiffs and others similarly situated were required to pay their own lodging and subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

101.    The expenditures set out in paragraphs 94 through 100 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

102.    The expenditures set out in paragraphs 94 through 100 were made before receipt of Plaintiffs' first paychecks in each contract period in which they worked.

103.     Defendants failed to reimburse Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers during the first workweek for the costs described in paragraphs 94 through 100, resulting in these workers' first week wages falling well below the FLSA and AEWR minimum wage.

104.     Defendants did not reimburse Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers at the 50 percent point of these workers' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed, as was required by their employment contracts.

105.     Plaintiffs, Opt-In Plaintiffs and other similarly-situated workers were paid for many work activities on a piece-rate basis, such that they were paid according to the amount of crops they harvested or packed.

<u>Packing Shed Work</u>

106.     During the 2011, 2012 and 2013 seasons, Defendants purchased significant quantities of produce from other producers ("outside produce").  This outside produce was re-packed in Defendants' packing shed for distribution.

107.     Plaintiffs E. Ponce-Rubio and Reyes-Velez, and Opt-In Plaintiff A. Ponce-Rubio, and others similarly situated re-packed outside produce in Defendants' packing shed during the 2011 season.

108.     Plaintiffs Franco-Hernandez, Garcia-Martinez and Rodriguez-Contreras, Opt-In Plaintiffs Martinez-Martinez and A. Ponce-Rubio, and others similarly situated re-packed outside produce in Defendants' packing shed during the 2012 season.

109.    Plaintiffs Franco-Hernandez, Reyes-Velez and Rodriguez-Contreras, Opt-In Plaintiff Porfirio-Santiago, and others similarly situated re-packed outside produce in Defendants' packing shed during the 2013 season.

110.    The Plaintiffs and Opt-In Plaintiffs specified in Paragraphs 107-109 above, as well as others similarly situated, regularly worked in the Defendants' packing shed for more than forty (40) hours in one workweek, including most weeks during the Spring and Fall harvest seasons.

111.    The Plaintiffs and Opt-In Plaintiffs specified in Paragraphs 107-109 above, as well as others similarly situated, never received one and a half times their regular rate of pay for the hours above forty (40) worked during a workweek in Defendants' packing shed.

112.    Defendants were on notice of their FLSA obligations due in part to prior litigation and due to notices and correspondence they had received.

113.    Defendant Hamilton Growers was on notice of its duty to investigate its compliance with the Fair Labor Standards Act due to prior suits in 1998 and 2003.

114.    Defendants knew of or showed reckless disregard for their FLSA obligations by failing to fully reimburse Plaintiffs and other similarly situated workers for expenses incurred for Defendants' benefit and by failing to pay overtime for hours worked in excess of forty while packing outside produce.

<u>Terminations</u>

115.    During the spring of 2012, Defendants' field supervisors regularly berated a number of the fieldworkers for not working fast enough.

116.    On or about May 15, 2012, the fieldworkers were told that they were required to pick a set number of buckets of cucumbers per hour.

117.     On or about May 16, 2012, Opt-in Plaintiffs Fidel Avila-Perez, Julian Badillo-Morales, Zenobio Mata-Chavez and Genaro Porfirio-Martinez were terminated by Supervisor Fermin Palomares.  They were told to pick up their final checks from the office.

118.     When Opt-In Plaintiff Fidel Avila-Perez picked up his final check from the office, one of Defendants' employees told him that he had not been picking enough buckets of cucumbers.

**COUNT I**

**FAIR LABOR STANDARDS ACT – MINIMUM WAGE**

119.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 114 above by reference.

120.     This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the minimum wage provisions of the FLSA pursuant to 29 U.S.C. § 216 (b).

121.     Plaintiffs E. Ponce-Rubio, Reyes-Velez and others similarly situated assert this claim for the 2011 seasons.

122.     Plaintiffs Franco-Hernandez, Garcia-Martinez, E. Ponce-Rubio, Rodriguez-Contreras, and Opt-In Plaintiffs Avila-Perez, Badillo-Morales, Martinez-Martinez, Mata-Chavez, A. Ponce-Rubio and Porfirio-Martinez, and others similarly situated assert this claim for the 2012 season.

123.     Plaintiffs Franco-Hernandez, Reyes-Velez, Rodriguez-Contreras, and Opt-In Plaintiffs Acosta-Hernandez, Martinez-Hernandez, Porfirio-Santiago, Mendoza-Martinez and Morales-Espinoza, and others similarly situated assert this claim for the 2013 season.

124.    As detailed above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

125.    The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 94 through 100 above, which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first week of work. When these expenses were subtracted from the Plaintiffs' and others similarly-situated employees' first week's pay, as required by law, Plaintiffs' and other similarly-situated employees' earnings were near or below zero, and fell well below the required average minimum hourly wage for that pay period.

126.    The violations set forth in this Count resulted, in part, from Defendants' practice of paying Plaintiffs and others similarly situated based on the quantity of the produce harvested or packed.

127.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and Opt-In Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

128.    Defendants' violations set out in this Count were willful within the meaning of FLSA.

## COUNT II

## FAIR LABOR STANDARDS ACT – MAXIMUM HOURS

129.    Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 114 above by reference.

130.    This Count sets forth a claim by Plaintiffs and others similarly situated for declaratory relief and damages for Defendants' violations of the maximum hours provision of the FLSA, pursuant to 29 U.S.C. § 216(b).

131.    Plaintiffs E. Ponce-Rubio, Antonia Reyes-Velez, and others similarly situated employed in the packing of produce assert this claim for the 2011 season.

132.    Plaintiffs Franco-Hernandez, Garcia-Martinez and Rodriguez-Contreras, and Opt-In Plaintiffs Martinez-Martinez, A. Ponce-Rubio, and others similarly situated employed in the packing of produce assert this claim for the 2012 season.

133.    Plaintiffs Franco-Hernandez, Reyes-Velez, Rodriguez-Contreras, and Opt-In Plaintiff Porfirio-Santiago, and others similarly situated employed in the packing of produce assert this claim for the 2013 season.

134.    The Plaintiffs and Opt-In Plaintiffs identified in paragraphs 131-133 and others similarly situated employed in Defendants' produce packing operations worked long hours for Defendants without receiving the protections of the maximum hours provision of the FLSA, 29 U.S.C. § 207.

135.    Defendants employed the Plaintiffs and Opt-in Plaintiffs identified in paragraphs 131-133 and other similarly situated in its packing operations to process and pack outside produce in workweeks when Plaintiffs and others similarly situated were suffered or permitted to

work more than 40 hours, without providing the Plaintiffs and others similarly situated one and a half times their regular rate of pay.

136.    Defendants violated Plaintiffs and Opt-in Plaintiffs identified in paragraphs 131-133 rights by employing them, and others similarly situated, for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of such hours at a rate not less than one and a half times the regular rate (150% of regular rate) at which they were employed, as required by 29 U.S.C. § 207.

137.    As a result of Defendants' violations of the FLSA, each of the Plaintiffs, and others similarly situated, are entitled to recover the amount of their unpaid overtime wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).

138.    Defendants had been investigated by the United States Department of Labor for violations of the overtime provisions of the Fair Labor Standards Act and were aware of the requirement to pay overtime to packing shed workers who packed or re-packed outside produce.

139.    Defendants' violations as set forth in this Count were willful within the meaning of the FLSA.

## COUNT III

### BREACH OF CONTRACT

140.    Plaintiffs and Opt-In Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 118 above by reference.

141.    This Count sets forth Plaintiffs' and Opt-In Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the rate of pay provisions, transportation provisions, and assurances provision contained in Plaintiffs' and Opt-In Plaintiffs' employment contracts, including the terms set forth in paragraphs 66-75 above, which created a contractual promise to

pay Plaintiffs and Opt-In Plaintiffs at least the applicable Fair Labor Standards Act wage and Adverse Effect Wage Rate for each compensable hour of work in a workweek and which promised transportation and subsistence from and returning to the place from which the worker came.  It also sets forth certain Opt-In Plaintiffs' claims for wrongful termination in violation of their employment contract.

Compensation Claims

142.    Plaintiffs E.  Ponce-Rubio and Reyes-Velez, and Opt-In Plaintiff Ponce-Rubio assert this claim for the 2011 seasons.

143.    Plaintiffs Franco-Hernandez, Garcia-Martinez, E. Ponce-Rubio and Rodriguez-Contreras, and Opt-In Plaintiffs Avila-Perez, Badillo-Morales, Martinez-Martinez, Mata-Chavez, A. Ponce-Rubio and Porfirio-Martinez assert this claim for the 2012 season.

144.    Plaintiffs Franco-Hernandez, Reyes-Velez  and Rodriguez-Contreras, and Opt-In Plaintiffs Acosta-Hernandez, Martinez-Hernandez, Porfirio-Santiago, Mendoza-Martinez and Morales-Espinoza assert this claim for the 2013 season.

145.    Defendants, through their agents, offered employment on the terms and conditions set out in the 2011, 2012, and 2013 job orders as described in paragraphs 66-74 above.

146.    The Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 above accepted Defendants' offer.

147.    Defendants breached their H-2A employment contracts with the Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 by failing to pay them at least the applicable Fair Labor Standards Act wage and Adverse Effect Wage Rate for each compensable hour of work in a workweek, as set forth in paragraphs 94-105 above.

148.    Defendants also breached their H-2A employment contracts with the Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 by failing to reimburse them, at the 50 percent point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

149.    Defendants also breached their H-2A employment contracts with the Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 by failing to pay or provide them transportation and subsistence expenses to the place from which they had come at the completion of work under their employment contracts.

Termination Claims

150.    Opt-In Plaintiffs Avila-Perez, Badillo-Morales, Mata-Chavez and Porfirio-Martinez assert this claim for the 2012 season.

151.    Defendants, through their agents, offered employment to the Opt-In Plaintiffs identified in paragraph 150 above on the terms and conditions set out in the 2012 job order, including the term described in paragraph 75 above.

152.    The Opt-In Plaintiffs identified in paragraph 150 above accepted Defendants' offer.

153.    Defendants breached their H-2A employment contracts with the Opt-In Plaintiffs identified in paragraph 150 above by terminating these Opt-In Plaintiffs based on production requirements that were not terms of their contracts.

154.    As a direct consequence of Defendants' breaches as set forth in this Count, the Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 and 150 above suffered damages.

155.    Defendants are liable to the Plaintiffs and Opt-In Plaintiffs identified in paragraphs 142-144 and 150 above for the damages that arose naturally and according to the usual course of things from Defendants' breaches as set forth in this Count, pursuant to federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages and reimbursement amounts, damages arising from the delay, and prejudgment interest.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)    Under Count I:

    1.    Declare that Defendants have willfully violated the FLSA as specified in paragraphs 119-128 above;

    2.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Opt-In Plaintiff and others similarly situated in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    3.    Award Plaintiffs and Opt-In Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b)    Under Count II:

    1.    Declare that Defendants have willfully violated the FLSA as specified in paragraphs 129-139 above;

    2.    Grant judgment against Defendants jointly and severally, and in favor of each Plaintiff and Opt-In Plaintiff  and others similarly situated in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

3.      Award Plaintiffs and Opt-In Plaintiffs their attorneys' fees pursuant to 29 U.S.C.

§ 216(b).

(c)     Under Count III:

1.      Declare that Defendants have breached their employment contracts with Plaintiffs

and Opt-In Plaintiffs as specified in paragraphs 140-155 above;

2.      Grant judgment against Defendants, jointly and severally, and in favor of each

Plaintiff and Opt-In Plaintiff, in the amount of each Plaintiffs' and Opt-In

Plaintiffs' damages that arose naturally and according to the usual course of

things from such breach and such as the parties contemplated, when the contract

was made, as the probable result of such breach;

(d)     Award Plaintiffs and Opt-In Plaintiffs pre- and post-judgment interest as allowed by law;

(e)     Cast all costs upon Defendants; and

(f)     Award Plaintiffs and Opt-In Plaintiffs such further relief, at law or in equity, as this Court

deems just and proper.

Respectfully submitted this _12th__ day of December, 2014,

   s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633

Michelle R. Lapointe
Georgia Bar No. 007080
James M. Knoepp
Georgia Bar No. 366241
Eunice H. Cho (Admitted *Pro Hac Vice*)

California Bar No. 266417
Southern Poverty Law Center
1989 College Avenue NE
Atlanta, GA  30317
Phone: (404) 521-6700

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have on this __12th__ day of December, 2014, filed

electronically with the Clerk of the Court the foregoing PLAINTIFFS' SECOND AMENDED

COMPLAINT, and all attachments.  The Court, using the CM/ECF system, will send notification

of such filing to the following:


        Benton J. Mathis
        Martin B. Heller
        Freeman Mathis & Gary, LLP
        100 Galleria Parkway, Suite 1600
        Atlanta, GA 30339
        Tel: 770-818-0000
        bmathis@fmglaw.com
        mheller@fmglaw.com

        *Attorneys for Defendants*




           _____/s Dawson Morton_____
           Counsel for Plaintiffs

27