IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

_____ :
:
ERENDIDA FRANCO-HERNANDEZ, et al., and :
all others similarly situated, :
:
      Plaintiffs, :
: CIVIL ACT. NO.: 7:14-cv-62
          v. :
:
SOUTHERN VALLEY FRUIT & VEGETABLE, :
INC., et al ., :
:
      Defendants. :
_____ :

### CONSENT ORDER & FLSA FAIRNESS DETERMINATION

Plaintiffs, Opt-in Plaintiffs, and the twenty-eight Claimants included in Exhibit A (collectively "Plaintiffs") and Defendants Southern Valley Fruit & Vegetable, Inc., Hamilton Growers, Inc., Kent Hamilton, Hamilton Farms Mex L.P., Hamilton Produce, L.P., Kenda Properties, L.P., WK Holdings, LLC, WK Mex Properties, L.P., and WKW, LLC (collectively "Defendants") agree to resolve the disputes that gave rise to this lawsuit and enter into the following Consent Order:

1. Plaintiffs, for purposes of this Order, are defined as the individuals that are listed in Exhibit A to this Order.

2. It is understood and agreed that the Court shall enter this agreement as a Consent Order and the parties condition their agreement on the Court's retention of jurisdiction for a period of two years to enforce the terms of this agreement.  The parties agree to use their best efforts to obtain entry of this Consent Order by the Court.

3. Upon receiving payment as described in paragraph 4 below, Plaintiffs will file a notice to inform the Court that the judgment may be marked as satisfied.

1

4. Defendants agree to pay to Plaintiffs and their attorneys a total gross sum of four hundred and eighty five thousand dollars ($485,000.00) plus the cost of transfers for payments made to Plaintiffs who reside in Mexico.  Plaintiffs' counsel agree to use the least costly method of transfer and will attempt to transfer funds via bank wire if possible, and if transfer cannot be made via a bank wire, then Plaintiffs shall transfer the money to Plaintiffs who reside in Mexico via Western Union under the then current Western Union fee schedule for payments made to Mexico.  Defendants will pay up to a total of $2,000 in wire and transfer expenses. Defendants also agree to pay for all of the mediation costs of Hunter Hughes for the mediation held on October 16, 2015.  One half of the settlement proceeds shall be paid within 30 days of the court approval of this settlement, and the other half of the total payment shall be paid between January 1, 2016 and January 15, 2016.

   a. Of this amount, one hundred ninety-five thousand, two hundred forty-four dollars and 60/100ths ($195,244.60) in gross payments shall be made payable in the form of two (2) checks for each Plaintiff: two checks (one within 30 days of court approval and one between January 1, 2016 and January 15, 2016) made out to that Plaintiff *and* the Georgia Legal Services Program, Client Trust Account, as back wages and wage damages in the amounts as detailed in Exhibit A, less any applicable withholdings for each Plaintiff's taxes, legally owed garnishments, liens or support payments, and any applicable amount of each Plaintiff's share of Medicare and FICA contributions on the Plaintiff's portion of payroll taxes; and

   b. $132,765.07 will be paid in two checks (one within 30 days of court approval and one between January 1, 2016 and January 15, 2016) made out to that Plaintiff *and* the Georgia Legal Services Program, Client Trust Account, as non-wage contract damages, interest, and liquidated damages in the amounts as detailed in Exhibit A, less any applicable withholdings for each Plaintiff's taxes.

   c. The Plaintiffs agree to pay their employee's share of any federal or state taxes, if any, which are required by law to be paid with respect to this settlement.  The Defendants agree that they retain responsibility for the employer's share of any

2

federal or state taxes, and that they will deduct and remit any taxes owed on the employee's share of the settlement payments.

    d. Defendants shall be responsible for any employer required tax-reporting on the payments made and for generating required tax-reporting documents, including the preparation of any required W-2 and/or 1099 IRS tax forms. The Plaintiffs agree to provide a new IRS form W-9 if collection of a new form is required by any applicable tax regulation.

    e. An additional one hundred fifty six thousand nine hundred ninety dollars and thirty-three hundredths ($156,990.33) is payable as attorney's fees ($131,990.33) and costs ($25,000) and shall be made payable to Georgia Legal Services Program.

5. Upon completion of the above payments and upon Court approval thereof, the Plaintiffs agree that the payments constitute satisfaction of their claims raised in this lawsuit, which are for the time period January 1, 2011 through April 24, 2015 ("the released claims"). The Plaintiffs, as defined above, waive and release all of the released claims, as alleged in this lawsuit, and will not file any other lawsuit arising out of the released claims, and agree that the entry of this order shall have the effect of dismissing the released claims and this lawsuit with prejudice. The released claims are:

    a. their claims in Counts I and II of the Second Amended Complaint for failure to pay minimum wage or failure to pay overtime (including violations caused by failure to reimburse pre-employment expenses); and

    b. their claims in Count III of the Second Amended Complaint for breach of contract related to Defendants' alleged wrongful termination for production standards in the 2012 season, for Zenobio Mata-Chavez,  Cheryl Breland, Nakeisha Brown, Alec Daniels, Timothy Scott Hall, La'Darius Moore, Carlsell Thrower, Derrick Green, Lakeisha Harris, Shawanna Wilson, Nanette Pace, Erica Langley, and Billie Pace. The remaining Plaintiffs do not assert a breach of contract claim related to his or her termination(s); and

3

    c.  their contract claims for failure to pay the Plaintiffs the Adverse Effect Wage Rate, as alleged in part in Count III of the Second Amended Complaint.

    d.  To the extent not already listed, the released claims include all claims made in this lawsuit by the Plaintiffs' Second Amended Complaint.

6. Defendants agree to comply with the FLSA and the H-2A program regulations and the specific sections at issue in this lawsuit, including the following:

    a.  Defendants will properly record and compensate for all compensable work performed in the field or packing shed, including all compensable time spent planting or harvesting, time spent traveling between fields or work locations, and time workers are engaged to wait, under either or both the highest applicable wage rate of the Fair Labor Standards Act, 29 U.S.C. § 206(a), and the H-2A program's Adverse Effect Wage Rate, 20 C.F.R. §§ 655.103(b) and 655.122(l);

    b.  Defendants will specifically make, keep and preserve the actual start and stop times for all workers and will record the actual start and stop times of any non-compensable meal or rest breaks; Defendants will provide workers with their daily start and stop time information on their paycheck stub each pay period, or on a separate sheet(s) of paper that is provided to the worker along with their paycheck stub each pay period.

    c.  Defendants will comply with their obligations under the FLSA and the H-2A program to reimburse each worker who has incurred costs to come to work for the employer, including payments owed under the FLSA or the H-2A program for transportation costs (both travel and subsistence expenses), lodging costs, visa and visa application fees, recruitment and processing fees;

    d.  Defendants will comply with the contractual requirement that if the employee's total pay for the pay period from piece rate earnings divided by their total hours worked at piece rate during that pay period results in average hourly earnings of less than the guaranteed AEWR (20 C.F.R. § 655.122(l)(2)) hourly rate, the worker will be provided build-up pay to the guaranteed AEWR minimum hourly rate;

     e.      Defendants will comply with their Fair Labor Standards Act's requirement to pay overtime compensation to packing shed workers in workweeks in which packing shed workers pack, repack, load, unload, or otherwise handle third party produce not grown by Defendants.

     f.      It is expressly understood that this section applies to all of Defendants' employees and not just the Plaintiffs who are parties to the settlement agreement, and that this Consent Order is enforceable by all of Defendants' employees and not just the Plaintiffs who are parties to the settlement agreement.

7. Defendants agree to take all reasonable steps to meet their field and packing shed hiring needs through the H-2A program in 2016 and 2017 with job orders submitted in their name and not those of a labor contractor, and will use their best efforts to have those job orders approved. Additionally, Defendants agree not to employ the services of any labor contractors to fulfill their field or packing shed labor needs without first offering employment to all Plaintiffs and/or Claimant who previously held an H-2A visa which they did not previously abandon within six weeks of beginning employment of their contract with Defendants and who seek rehire for the 2016 and/or 2017 season(s).  These provisions are contingent on Defendants being accepted to participate in the H-2A program, which they will not voluntarily exit.

8. Defendants shall pay each employee using a bank-issued check card beginning in 2016. Each employee shall receive his or her own individual card.  Defendants shall bear any administrative costs associated with the issuance of one check card per employee.  The check cards shall allow each employee to access funds at least once a week at no cost to the employee.

9. Defendants agree to bar individuals from charging workers any additional recruitment fee, and reimburse workers if any recruitment fee is ultimately charged by any person who is shown to be acting as Defendants' agent or at the direction of an agent of Defendants.

10. Defendants agree to pay all costs legally required by the FLSA and/or the H-2A program, including the following costs associated with the recruitment and travel of workers: 1) costs associated with the consular interview, including any fees paid to the State

5

Department and any fees paid to third-parties who assist in consular process that are legally required to be reimbursed; and 2) the cost of transportation from the U.S.-Mexico border to Defendants' operations.  Defendants' payment of these costs does not relieve Defendants of their obligation to pay for any remaining legally owed remainder of the costs due to be reimbursed during the first workweek, which may include the cost of transportation from each workers' hometown to the U.S.-Mexico border, lodging and subsistence costs.

11. Defendants will not retaliate or discriminate against any worker in violation of 29 U.S.C. § 215(a)(3) or 20 C.F.R. § 655.135(h).

12. This Consent Order constitutes the entire agreement between and among the parties, and no change or additional term shall have any force or effect unless written and signed by all parties or their authorized counsel and entered by the Court.  No oral understandings, statements, promises or inducements contrary to the terms of this agreement exist.

13. This Consent Order is to be construed and governed under the laws of the state of Georgia and shall bind the parties and their respective heirs, estates, successors, assigns, and affiliates.

   a. If Defendants' operations and/or business interests are sold or leased during the term of this Consent Order, Defendants shall promptly send written notice to Plaintiffs' counsel of the sale or lease. Such notice shall include the following information: (a) the name of the buyer or lessee; (b) the effective date of the sale or lease of the interest and/or asset; (c) Defendants' position as to whether the buyer or lessee is a Covered Buyer (as defined herein); and (d) whether the buyer or lessee is a Related Entity (as defined herein). Upon reasonable notice, Defendants shall provide a copy of the asset purchase agreement or lease agreement available to Plaintiffs' counsel.  Nothing in the paragraph changes or modifies the definition of "Covered Buyer" as set forth below.

   b. Covered Buyer – A person(s) or an entity(ies) to whom Defendants sell or lease all or part of its operations and/or business interests during the two years following the entry of this Consent decree who: (a) substantially continues the business operations of growing, packing, and selling fruit and vegetable produce;

6

(b) employs the same or substantially the same work force; (c) employs the same or substantially the same supervisory personnel; (d) maintains the same or substantially the same jobs under the same or substantially the same working conditions; and (e) uses the same or substantially the same machinery, equipment and methods of production.

c. If Defendants' operations and/or business interests are sold or leased to a Covered Buyer, Defendants shall provide the Covered Buyer with a copy of this Consent Order, and all non-monetary conditions of this Consent Order shall apply to the Covered Buyer.

14. If any provisions are determined by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions shall continue in full force and effect except: 1) that if the settlement is not approved as a fair and reasonable resolution then this agreement is voidable at the election of either party, and 2) that the Court's retention of jurisdiction, as described in Paragraphs 1-2 above, is a non-severable term of this agreement and the Court's failure to retain jurisdiction for the purpose of enforcing this agreement shall render this agreement void for all purposes.

15. Respective counsel for the parties have express authority to enter into this Consent Order on behalf of their clients, pursuant to O.C.G.A. § 15-19-5.

16. Except as otherwise agreed above, the Plaintiffs agree to pay their share of any federal or state taxes, if any, which are required by law to be paid with respect to this settlement. The Plaintiffs acknowledge that neither the Defendants nor their attorneys make any representation as to the tax consequences, if any, of the provisions of this Agreement.

17. Defendants expressly deny liability, and state that the payment set forth herein does not constitute any admission of liability on the part of the Defendants.

Having scrutinized the settlement and Determined that the settlement is fair and reasonable under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), IT IS THEREFORE ORDERED that all foregoing terms and conditions be, and the same are,

7

hereby approved and incorporated fully into this Order.

SO ORDERED this 4th day of November, 2015.

*s/ Hugh Lawson*
JUDGE, UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

Respectfully submitted this _3rd__ day of November, 2015,

_s/ Martin Heller_____

Benton J. Mathis
Martin B. Heller
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Tel: 770-818-0000
bmathis@fmglaw.com
mheller@fmglaw.com

Attorneys for Defendants

__s/ Dawson Morton_____

Dawson Morton
Georgia Bar No. 525985
Georgia Legal Services Program, Inc.
104 Marietta Street, Suite 250
Atlanta, GA 30303-2706
Tel.: 404-463-1633
Fax: 404-463-1623

Michelle R. Lapointe
Georgia Bar Number 007080
James M. Knoepp
Georgia Bar Number 366241
Eunice H. Cho (Admitted *Pro Hac Vice*)
California Bar Number 266417
Southern Poverty Law Center
1989 College Avenue NE
Atlanta, GA 30317
Phone: (404) 521-6700

Attorneys for Plaintiffs

8